MEYER v. CHEROKEE DEVELOPMENT CO. *et al.*

No. 1453. Opinion Filed January 16, 1912.

(120 Pac. 1106.)

CORPORATIONS—Subscription to Stock—Requisites. The plaintiff introduced persons, who afterwards formed a corporation to engage in the business of taking oil leases, drilling for oil, etc., to other persons from whom they obtained leases, with the understanding that he should become a member of the corporation, to be formed, upon paying for his interest at the same rate as the other members. The corporation was organized in May, 1904. Some time in March, 1905, plaintiff wrote to one of the corporators to know why they had not called for his part, who replied that he had requested some stock reserved for plaintiff, and requested plaintiff to write him how many shares he wanted, and that they were selling stock at one dollar a share to raise money to operate, and that it would take $25,000 for development. Plaintiff never replied to this letter, or made any further offer to pay. The other incorporators paid in $1 per share for the stock issued them. After the property was developed, plaintiff brought suit to recover an interest. **Held,** that plaintiff could not recover.

(Syllabus by Rosser, C.)

*Error from District Court, Washington County; T. L. Brown, Judge.*

Action by Joseph Meyer against the Cherokee Development Company, a corporation organized and doing business under the laws of Colorado, and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*George, Campbell & Ray* and *A. T. Dumenil,* for plaintiff in error.

*W. H. Kornegay* and *W. A. Chase,* for defendants in error.

Opinion by ROSSER, C.   This was a suit by Joseph Meyer against the Cherokee Development Company, J. W. Atkinson, W. W. Atkinson, and A. P. Toombs to require the Cherokee Development Company to issue to plaintiff certificate of stock for three-sixteenths of the capital stock of that company, or, in case of its inability to issue the certificate of stock, to recover a money judgment against all of the defendants for the sum of $46,250, the value of the three-sixteenths of the stock.   At the close of the plaintiff's testimony, the defendants demurred to the evidence, and the court took the case under advisement for four days, and then sustained the demurrer, and rendered judgment for the defendants.

The only question before this court is as to whether upon the evidence introduced the court should have found for the defendants.   The evidence of plaintiff shows that about the 1st of March, 1904, the defendant Toombs came to Bartlesville, where plaintiff resided, and told plaintiff that he and the two Atkinsons wanted to put up some money to develop some oil leases, but that he was unable to find any property suitable for the purpose. Plaintiff told him that he knew of such property, and also said to him:

"I have got some money, and I have been looking for a good responsible party that I can lease from, and a good honest man to go into it, and I would be glad to take a lease with somebody. I wouldn't charge you anything for getting the lease."

Toombs then said to him, among other things:

"If we got a lease here, we would want somebody to live here, and you would be just the man we are looking for."

Plaintiff then testified to going to Mr. Bartles and talking with him about the lease, and then referring Toombs to Bartles, and about Bartles stating that he knew plaintiff, and would look up the business standing of the defendants, and see whether or not he would make a lease to them.   He then testified to the Atkinsons, Toombs, and Bartles meeting in his room, and the conversation they had, in which he admits saying:  "Gentlemen, I don't want any money.   I don't want any money.   I will pay dollar for dollar."   He further testified that he told them:  "I

will pay for every sale. I will pay as good as anybody. I don't want any favors nor any stock for nothing like some of them do." He then testified that Judge Dumenil wrote a contract which was signed in his presence, but to which he was not a party. The contract was introduced in evidence, and was an agreement between Joe Bartles, J. W. Atkinson, W. W. Atkinson, and A. P. Toombs, by which they agreed to organize a corporation, in which Bartles was to have one-fourth of the capital stock, and the other three parties were to have the remainder of the stock. The land which Bartles was leasing them was valued, and the other three parties agreed to pay in, in money, three times the value that was placed upon the land which Bartles leased. Plaintiff testified that at the time the lease was signed Mr. Atkinson said he would take care of Joe Meyer.

On the 4th of May, 1904, the corporation was organized. It was first organized at $1,000,000; but, when it was ascertained that the Secretary of the Interior would require a certificate that one-fourth of the stock was paid up before he would approve the lease, the stock was reduced to $50,000. No money was paid in by the defendant members of the corporation until some time in January or February, 1905. Some time in March, 1905, Meyer wrote to Atkinson and Toombs that he had heard the corporation was formed, and that he was surprised they did not call for his part, and on the 27th of March, 1905, Toombs replied, telling him that they had made the capitalization 50,000 shares, and it left a very little stock to be distributed. The letter also stated that it would take $25,000 to do the development work, and the only way to raise the money was to dispose of the stock at $1 a share, and each stockholder would be obliged to go upon a bond, which was to be filed with the government, for the faithful performance of the work, the bond to run for fifteen years; that he had requested Atkinson to reserve some of the stock for Meyer until he could hear from him, and also requested Meyer to answer and advise him how much stock he wanted to take up. The plaintiff did not reply to this letter, or pay in any money, or offer to do so at any time prior to the bringing of the suit October 23, 1905. Early in the spring of 1905 the first well was drilled. Three or

four other wells were drilled before suit was brought. It appears that out of the $50,000 capital stock $6,900 was issued to Bartles in payment of the price of the lease which he had furnished, and three times the amount, or about $27,000, was paid in by Atkinson, and the balance of the stock was held as treasury stock for some time, when it was distributed as divided stock, Bartles getting enough, in addition to that which had already been issued to him, to amount to $12,500.

It thus appears from the testimony that Meyer was not to receive anything for his services in introducing Bartles to the defendants Atkinsons and Toombs, except the right to become a member of the corporation upon the same terms as the other defendants. To use the language of his counsel in the brief in this case:

"It will be noted that the plaintff did not ask or bargain for a promoter's bonus for furnishing the lease that the company ultimately acquired. His contract was that he be allotted a one-fourth interest in the three-fourths interest left after Joe A. Bartles received his one-fourth interest, and, in the language of the plaintiff, he would pay for his fourth interest, 'just as good as the rest.'"

He never did that, or offered to do it, and therefore cannot prevail in this action. Bishop on Contracts, sec. 1450; *Gilbert v. Port*, 28 Ohio St. 276. He sat by when the agreement to form a corporation was made between Bartles and the other parties, and did not have himself made a party to the agreement; and it appears that he paid no further attention to the matter until several months after the corporation had been organized, and that, then when he made inquiry, he was offered an opportunity to buy stock upon the same terms that the others bought, and did not avail himself of it. After the property was developed, and appeared to be valuable property, he attempted to require the defendants to give him what he declined to take when it was uncertain whether the property would be a paying proposition or not. When the offer was made to him, he should have accepted it. His acceptance now comes too late. Bishop on Contracts, secs. 1420-1422.

The proposition upon which plaintiff cites authorities concerning the liability of corporations upon promoters' contracts cannot be questioned, but in this case Meyer was not to get anything for nothing. He was to have stock by paying as did the other members. The proof showed that the other members paid, but, when the opportunity was offered him, he neglected to avail himself of it within a reasonable time.

The demurrer to the evidence was properly sustained, and this case should be affirmed.

By the Court: It is so ordered.

All the Justices concur.